The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, but the Court is now sitting. Thank you. Please be seated. Judge Packer and Judge Richardson, I'm glad to have you here at the Fourth Circuit today, so we look forward to some interesting arguments. In the first case, N. Ray Emerson, Eugene Stevens, Ms. Owens, Ms. Givens, I'm sorry. Good morning, Your Honor, and may it please the Court. My name is Jennifer Givens. I'm here from the Innocence Project at the University of Virginia School of Law on behalf of Emerson Stevens, the movement in this matter. Mr. Stevens was wrongfully convicted of the 1985 murder of Mary Harding in Lancaster County, Virginia. The case against Mr. Stevens was read thin. Indeed, as we often see in wrongful conviction cases, the first jury hung on the question of guilt. We're here today on Mr. Stevens' motion for authorization to file a successive federal based on newly discovered evidence. In order to grant authorization to pursue a successive claim in district court, 2244B2B requires this Court to answer two and only two questions. Has the movement shown that the factual predicate of the claim could not have been discovered previously through the exercise of due diligence? And has the movement shown that the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense? We urge this Court to decline respondents' invitation to inappropriately expand the scope of this inquiry. As this Court most recently reiterated in In Re Donnell Blount, the inquiry at this authorization stage is a relatively superficial one. This Court need not decide whether Mr. Stevens will ultimately prevail in his claims. Instead, this Court must only determine whether he has made a prima facie showing that he satisfies the requirements of 2444B2B. Prima facie showing is, quote, simply a sufficient showing of possible merit to warrant a further exploration by the district court. The analysis here may only entail a cursory glance at the merits. The inquiry at this level has been described as a relatively low bar, not a difficult standard to meet, and lenient. Mr. Stevens has no doubt cleared this relatively low bar. First, the factual predicate for the new claims could not have been discovered previously through the exercise of due diligence. On October 4, 2016, Mr. Stevens filed... What about when counsel was permitted to review the Commonwealth's attorney's file in April of 2013? Yes, Judge Thacker, the respondent has suggested that these claims were somehow available upon the review of the file in 2013. Respondent assumes without any support whatsoever that the box of materials provided to counsel in 2016 was identical to the materials contained in the Commonwealth attorney's file that was reviewed in 2013. And that is not the case. Had counsel reviewed exculpatory information regarding Earl Smith and Dr. Boone's testimony, he certainly would have raised it at the very latest in our initial state habeas petition that we filed on October 4th or 6th of 2016. There's absolutely no evidence that the material was the same that we received and reviewed. Is there evidence that it wasn't the same? The evidence that it wasn't the same is the fact that that material was not contained in the initial successive state habeas petition. Certainly, Your Honor, if we had had that material, as powerful as it is, we would have submitted it with those initial state habeas claims. And the fact that we did not is, I submit to you, clear evidence that it was not available. We certainly would have had no reason to sit on that evidence and not use it given the types of claims we were pursuing in state habeas at that time. Is there any way, I understand your argument, sort of circumstantially we ought to assume y'all did y'all's job well, and therefore it wouldn't have been included. Is there any way to actually know what was in that box? I mean, maybe not on this record, but even on any record, is there a way to ever know what was in that box? Judge Richardson, are you talking about the materials that were reviewed in 2013? The 2013 box. I understand the 2016 box, but I'm talking about, it just seems unclear to me, y'all both say different things about what was in the box. Is that a knowable piece of information? And if it is unknowable, how does that affect you? Your Honor, I don't have a way of knowing that information. I was not with the office and I was not present during that review. To my knowledge, the Commonwealth's attorney told the lawyer from the Innocence Project at the time that he could not copy any materials. Do you know who the lawyer was from the Innocence Project who did review the box in 2013? Yes, Matthew Ingle. So in theory, a district court could evaluate through testimony what Mr. Ingle saw or didn't see. Absolutely, Your Honor. So that's what I'm trying to determine. There is a way of knowing that, or at least to the best of his recollection, knowing that. And maybe someone from the Commonwealth would say, well, I was sitting there and I went through the box too and I saw these things. That's knowable information. It's just not known today. That is correct, Your Honor, and I presume that if the Commonwealth had information to counter us at this point, they would have already submitted it. Well, I assume that because this is a pretty factually intensive issue, going to the question of timeliness, we ought to let the court handle it under 2254. Is that your position? That's absolutely our position. I mean, particularly, I mean, I'm happy, obviously, to answer the court's questions, but I submit that these types of questions are more appropriate for the district court when assessing whether the claims are, whether the district court can grant relief and whether 2254D presents any problem. The questions before the court now are not those. So with regard to the box of 2016 materials, Mr. Stevens had been requesting exculpatory evidence and specifically – Just so I'm – I'm sorry. I don't mean to get hung up on this issue, but I want to make sure that I'm – For this purpose, your client has alleged, taking the FBI report as an example, that the FBI report was not in the 2013 box. Yes. At least the portions of the FBI report that we reviewed in the 2016 materials. Understanding there may be other FBI, I understand, but the portions of the FBI report that you're relying on, your client has alleged, whether correctly or incorrectly, to be determined at a later date, has alleged that that information was not in the 2013 box. Absolutely, Your Honor, yes. And so we submit that we have satisfied the diligence requirement here because despite requests over the course of three decades, the materials that were contained in the 2016 box of materials were never disclosed to Mr. Stevens, you know, despite requests from the time of trial onward. So we believe we have satisfied the first prong of 2244B2B. And so we'd like to now sort of move on to the question of whether the facts underlying these claims  And so I'd like to look at the facts claim by claim. In the first claim, we allege that the Commonwealth knowingly presented false testimony from Dr. Boone and suppressed evidence showing that the testimony was false. The Commonwealth at trial presented testimony that the victim's body was dumped approximately 10 miles downstream from where she was eventually found. The theory was that the victim's body was dumped somewhere close to where Mr. Stevens docked his boat and that the body floated 10 miles upstream to where she was finally discovered. At Mr. Stevens' first trial, the Commonwealth witness, Dr. Boone, testified how this was possible, explaining that even though Mrs. Harding's body was weighed down by a cinder block, a rope, and a chain, it was feasible for the current to carry her 10 miles upstream over the course of four days. Dr. Boone did not testify at the second trial, but his initial testimony was read into the record instead. All the while, though, the Commonwealth knew that Dr. Boone's testimony was false. Included in the 2016 materials was a portion of the FBI report that concluded, quote, the victim was dumped within 500 to 600 yards of where her body was eventually located. This conclusion is consistent with Dr. Boone's confession to the Commonwealth attorney after his testimony at the first trial, that his testimony was appropriately characterized by the Virginia State Special Agent David Riley as eyewash, meaning deceptive, misleading, nonsense. When Dr. Boone's testimony was requested at the second trial, Dr. Boone balked, telling the Commonwealth attorney, I myself have no direct knowledge of any specific event or direct observation relating to both the place and time in question. The recently disclosed materials also include Special Agent David Riley's investigative notes, which indicate that Dr. Boone warned him that at best my opinion was merely information speculation and that there were too many variables and no real conclusion could be made. Dr. Boone's testimony was critical to the Commonwealth's case against Mr. Stevens. The Commonwealth theorized that in the early morning hours after Murray Mrs. Harding, Stevens took his boat out a short distance and dumped her body in the water. I don't want to interrupt you too much, but you talk about the eyewash letter. There is evidence that that information was known to you prior to 2016. That is correct, Judge. I think I follow your argument, but help me make sure I understand. Explain to me why, given that you knew that earlier, why we should be considering that evidence or why it's part of the same claim, if you would, as, let's posit, the newly discovered information in the FBI report that seemed to be the focus of this argument. You are correct that the eyewash letter was available in 2013. It is appropriately considered as part of our false testimony claim now, however, because it is part of what the Court has to weigh. The claim that the Commonwealth knowingly presented false testimony from Dr. Boone, we submit was not available in that we did not believe we had a sufficient amount of evidence to prove that the Commonwealth knew the testimony was wrong until we had the confirmation conclusion from the FBI report in the 2016 materials. So while maybe we could have had a Brady claim, say, which is a higher standard of prejudice showing required at the time that we had the eyewash letter, it was not until we had this definitive conclusion from the FBI that was in the hands of the state that we could prove, we believe, that the state knowingly presented false testimony. Do you need this eyewash letter and the whole Dr. Boone thing? Don't you have much more to quarrel with in the way this case was handled than just Dr. Boone's testimony? Oh, we absolutely do. I mean, the Commonwealth lied through several witnesses and about several important pieces of evidence in this case. I mean, it was clear the Commonwealth was twisting itself into pretzels in order to concoct a case against Mr. Stevens. I do submit that Dr. Boone's testimony was a critical part of their theory, and I believe that while we may have had the grounds for a Brady claim in 2013 based on the eyewash letter, we did not have the grounds for a false testimony claim until we saw the material contained in the 2016 materials, and it's a lower standard of proof with regard to that. Tell me how I ought to think about the sort of division of claims. So you bring one claim, as I read it, addressing Dr. Boone's testimony, and in that you bring two separate constitutional violations, false testimony and Brady, and then in support of each of them you use various pieces of evidence. I assume your position is we don't at this stage of review, we're not to slice and dice your claim into the pieces for which you exercise diligence and for the pieces that you didn't, the claim, the subclaims that are or are not viable, your argument is that we ought to consider it as a claim in total. I certainly think obviously our diligence is a fair question at this stage of the inquiry, but yes, whether relief could be granted on a subclaim. We pled the Brady claim in claim one as an alternative claim, that if the court didn't believe the Commonwealth knowingly presented that false testimony from Dr. Boone, then alternatively the Commonwealth at least should have turned over not just the eyewash letter, but the report from the FBI conclusion with regard to where the body was dumped, and that certainly was not available, that portion of that was not available prior to 2016. So even if you take the eyewash letter out of the equation completely, we still have grounds for relief based on a false testimony claim that was not available prior to 2016. That's what I'm trying to get at. For the Boone, and I know we could talk about other claims, but same sort of conversation. It's sufficient for us to determine that the FBI report gives you a plausible argument on both false testimony and Brady. Absolutely. And we need not at this stage make a determination about whether there's an independent or a cumulative claim with respect to the eyewash letter as long as there's an adequate showing with respect to the FBI report. That's certainly our position. We have under claim one made an adequate showing based on the 2016 materials that were entitled to relief under NAPU v. Illinois or Brady v. Maryland. All right, Ms. Gibbons, you have some time in rebuttal, so I'm glad to hear from you. Okay, thank you. Yes, sir. Good morning. Pleased to report, I'm Matthew Duggan, Senior Assistant Attorney General, on behalf of the respondent to the application. We argue, as alluded to, that this application or motion can be disposed of by consideration of the statute of limitations bar, as this Court noted in reverser. But as Petitioner has pointed out, the same consideration we put in brief, the similar considerations also inform the decision this Court must make under B-1 about the diligence. I think it's not a fair characterization of our argument to say that we are assuming that everything was in the 2016 materials provided by the Sheriff's Office was in the 2013 materials provided by the Commonwealth's Attorney. What we've argued instead is that the FBI report was available long before either of those examinations. It was, in fact, submitted by the prosecutor to the trial court for consideration of whether it constituted material that should be disclosed. The prosecutor followed the Supreme Court's suggestion in August that if it's a closed question, it should be submitted. Do you have any idea about what the trial court was actually looking at at that time? Something like five inches or one-inch stack of material? There's a reference, without a lot of provenance, but there's a reference to a larger material having been seen by someone at some point. But it was identified at trial and not challenged at trial that this was the FBI report. It was made part of the record under seal and was available for Mr. Stevens' counsel at that point to have appealed the ruling by the trial court pursuant to Augers if he disagreed with it and would have been reviewed, as the cases we cited on brief show, by the Virginia Appellate Court. So you're saying the court saw the FBI report, saw the full FBI report, but defense counsel did not? Defense counsel did not at trial. It was reviewed in camera by the court, and it ruled pursuant to Augers that it saw nothing that was required to be disclosed to counsel. Let me ask that sort of question that goes with that. If a prosecutor shows it to a trial judge and they both agree it should not be disclosed, but let's just assume hypothetically they were both terribly wrong, and, in fact, the evidence contained in the report was exculpatory, just because the judge reviewed it doesn't mean that years later on a habeas claim that it would be – it could not form the basis of a Brady claim, right? The mere fact that a judge reviewed it and got it wrong doesn't insulate the conviction from ever being challenged on Brady grounds. No, our argument is that because the judge reviewed it and – I understand your argument. I want to establish the premise first, though, right? The first step is you're not arguing that the judge's review precludes the FBI report from ever becoming the basis of a Brady claim. No, I'm arguing that his waiver of his right to appeal in 1999 means he was not diligent in pursuing it. And so your argument is that in order to have diligently pursued his rights, he was required to appeal the withholding of information that he didn't know what it was. He was required to appeal the judge's, Agger's, decision. And he knew. His correspondence that's in the record we've cited on brief shows that it at least, with respect to two witnesses, with Dick and Harding, he suspected there was additional information in the FBI report. He even referenced in his petition for appeal on that information. What is the authority that you rely on for that proposition, that diligence, for the purposes we're talking about, that diligence for filing a successive habeas petition requires the appeal of a trial judge's decision not to require the disclosure of information? I'm not saying you're right or wrong. I'm just, what is the authority on which you rely? Are there any cases? Has any case ever held that? I don't have a case on point on that, Your Honor. What we rely upon is that the claim, if he disagreed with the trial court's ruling, was available to him in 1999, and he did not include in his petition for appeal that the trial judge had erred in any way in the Agger's ruling. How would he know if the trial judge erred? Because, as I said, in the claims he did make in the petition, he references the fact that he suspects there's additional information in support of them in the FBI record. And there's correspondence as well that both parties have cited immediately following trial, from trial counsel, complaining that he suspected there was additional information in the FBI record that he didn't have access to. And, as has been referenced, they've been making efforts for several years to locate this FBI report, presumably on the belief that it has information necessary to pursue claims. And the Commonwealth has not, at least until 2016, assisted them in their search. Is that a fair description? No, that's correct. The prosecutor relied on the trial court's ruling that he did not have to disclose it. And I don't know either what portions, if any, of the FBI report were still in the file that the successor Commonwealth attorney provided in 2013. But we don't argue that the FBI report was there. The only claims that the 2013 review of this Commonwealth attorney's file, we argue, are pertinent to are the part that has been conceded, the portion of the claim involving Dr. Boone that references the letter he sent, and the, as I've numbered them, the fifth Brady claim with respect to a letter from the Commonwealth attorney to Investigator Riley. I think the fair inference from the record at this point is that the prosecutor's own correspondence to the lead investigator was part of the Commonwealth attorney's own file. And the claims then, fourth and sixth, as we've numbered in our brief, Brady claims, there's no diligence shown because those claims were, in fact, as the state habeas court noted, raised during the 1989 appeal and were available to them in habeas at least since the conclusion of the direct appeal. With respect to the facts underlying portion of the inquiry this court's required to make, the facts underlying the claim are only the various Brady allegations and the two claims of false testimony. It's been argued by the petitioner that under the statute this court is limited to a cursory look. The argument specifically with respect to Dr. Boone this morning strikes as far more than cursory. I'd submit that a cursory look at the allegations should reach, but not reach so much behind, what determinations of fact have already been made. And specifically, the state habeas court, as to the first two claims, has found that the testimony by those two witnesses was not, in fact, false. And that would cut, if that's an accurate factual holding or one the court should rely upon in its cursory review, there is no reason to encourage those claims to proceed. If the testimony was not false, there is no allegation. You said if that was an accurate factual finding. Does the Commonwealth dispute that it was? No, no. Okay. I take it the petitioner disputes. Yeah, it sounded a little bit to me like you might have had some question about it. No. Okay. I think it's not only a reasonable finding, should it ever be reached under 2054, but it's a correct one. For the reasons the state habeas court put, and we've discussed more length in our brief. And if neither statement was false, there's no claim. Similarly, if, as the state court has found, that three of the Brady claims were not exculpatory, two of them were known at trial, one of them you found not material later, and one presented the round letter found not to be exculpatory here, the cursory review should be that there's no reason to encourage pursuit of those claims in a subsequent petition. There's been a discussion in brief about a variety of other allegations that the petitioner has suggested that tend to demonstrate his innocence. But none of those were part of claims presented in the state court or on brief or in the proposed petition. Under the plain language of the statute, his application for successive petition is limited to the facts underlying the claims. That's the two witnesses alleged to have testified falsely and the various supposed Brady withholdings. Those do not support his innocence. I take it, counsel, that, and I don't speak of you, I speak of the Commonwealth generally, properly argued in the state habeas proceeding that the court was not permitted there to consider the overarching actual innocence claim, that there was a procedural bar on that. What the Commonwealth argued in the state habeas claim was that state law did not have an analog to Shloop. Right. And here, perhaps properly, you also argue that there are various procedural, statutory, and other bars on which you may ultimately prevail that will preclude this court from considering whether he is actually innocent. And I understand that and respect the Commonwealth's ability to make those arguments. But I certainly hope that the Commonwealth recognizes that with the broad discretion it has in prosecuting and maintaining prosecutions, it also has a very high responsibility to ensure that it asserts those defenses in cases where it is appropriate to do so. And so I hope that the fact that you are able to prevail in the state court and you may or may not be able to prevail in federal court does not preclude the Commonwealth in the exercise of its broad discretion to consider what the appropriate course of action is. Do you understand that? I believe I do, Your Honor. And, of course, the other remedies that petitioners in situations similar to Mr. Stevens have under state law is the evidence they believe shows they are, in fact, innocent, is to pursue those writs that are provided under state law. And the executive branch of the Commonwealth has remedies in its own right. And the executive branch, in addition to the petition for writ of action, the executive branch has clemency authority, certainly. Well, specifically, the governor has clemency authority. Our office does not. But we would submit, Your Honor, for both prongs under 252 or B2B, Mr. Stevens has not shown either that he has been diligent because the events were available either at trial or no later than, in two cases, the review of the Commonwealth's attorneys' file in 2013, and has not shown that the facts underlying his claim on the cursory review can support relief, since the only findings that have been made on those claims at this point are that they were not false statements, not exculpatory evidence, or in two cases, one case not material. We have argued that the case can be disposed of by statute of limitations. As I said, I want to be clear, my argument was not or was not intended to be that this court is limited by consideration of statute of limitations. I think a fair reading of Vassar is that the court can, in appropriate cases, reach that question. And in cases where it believes the statute of limitations question is either not clear on the record or not discernible on the petitions presented to it, leave the matter to the district court. It's our argument simply that, as we've presented the record and the history of this case, it is clear from this record, without need for further factual development, that the claims are barred not only under the requirements of B-1 and 2, but would be barred under the statute of limitations. And in the court's exercise of discretion, it would be appropriate not to encourage further pursuit of a claim that would, on the face of the claim, be fruitless. For those reasons and the reasons we've stated on brief and by our supplement authority submitted earlier this week, we ask that the application be denied. Thank you, sir. Ms. Givens. Thank you, Your Honor. Briefly, with regard to the diligence question, I think the Commonwealth is not contesting the fact that the FBI report has never been made public. And that he is not arguing that the FBI report or any portion thereof was contained in the file reviewed in 2013. And we also, I can represent that we did make additional requests for the FBI report after the 2013 review of the file, just as further evidence that the material contained in that report was not contained in the file. His response is a little different, it seems to me. What he's saying is that you had an obligation to appeal the requested disclosure and that the failure to appeal demonstrates a lack of diligence. What's your response to that? First, answer, are there cases to the contrary? He says there are no cases in favor. Are there cases to the contrary, or is this just an open issue? And alternatively, what's your response to that argument, that the failure to appeal the FBI nondisclosure ruling demonstrates a lack of diligence? We certainly do not think that that is relevant to the diligence inquiry here, because the question before this Court is, were the facts underlying these claims available previously through the exercise of due diligence? And there's no question that this report was never available prior to 2016. No, no, but his argument is, had you appealed, an appellate court would have seen the error of the trial court's ways and would have given it to you at that point. Diligence in his argument, and I'm not adopting it, right, I'm just trying to articulate it to understand your response. His argument is that you're required, you being a petitioner or not, you personally are required to diligently pursue the remedies available to you to get what you need, right? And so we all agree, you know, had you sat on your hands and done nothing until 2016, we might look at that, one could look at that and suggest that that was a lack of diligence. Your argument is, well, we've shown a lot of diligence since 2013, maybe back to 2008, when you start making various other requests, but what he says is you haven't satisfied that first block. So what's the response to that? And, Your Honor, first of all, the trial counsel did raise the issue on direct appeal. He raised the issue, and we have this site in our brief. He raised a claim about the Commonwealth's failure to disclose exculpatory material, and he specifically named the FBI report as part of the material that included exculpatory evidence. And then he pursued it again in 1992 in post-conviction proceedings. What's the direct appeal? All right, so that's helpful to me. What's the direct appeal? Do you have the direct appeal site? If it's in your brief, it's fine. I can find it. And I don't have the JA site, but I have it because I looked at the brief yesterday, and it's page 29 of the opening brief, but I will submit the site to the court. No, no, you don't need to. I can find it. So he did raise it. He did raise the claim, and he continued to raise the failure to disclose exculpatory evidence in post-trial motions, in post-conviction proceedings, and in repeated requests over the course of decades. So I certainly think that the respondent's argument in this regard should fail with regard to diligence. And then I briefly sort of wanted to address this. At least with respect to the standard that we have now, a district court might well take a different view of that, but your point is that the district court ought to figure that out, not us. Right, right. That we certainly have made a prima facie showing of our diligence. It obviously will be, if authorization is granted, it will be up to the district court to make the definitive conclusion about whether we satisfy those provisions and whether relief is warranted on the claims. But certainly this cursory glance, and I'd like to address the respondent's contention that a cursory glance means only that you look back and see that the state court denied the claim, and therefore we shouldn't go any further than that. I certainly submit that's not what the courts meant when they said a cursory glance of the merits. And with regard to the second prong of 2244B2B, I just wanted to touch briefly on the evidence that we have of Mr. Emerson's innocence. We know that the Commonwealth lied about where the victim's body was dumped in order to connect Mr. Stevens to the crime. We know that the Commonwealth lied about Mr. Stevens' whereabouts on the morning after Mary Harding's disappearance in order to connect him to the crime. We know that the Commonwealth suppressed evidence of alternate suspects and evidence that could have been used to impeach several of its witnesses. We also now know that one of the Commonwealth's witnesses, Clyde Dunaway, was subsequently convicted of obstruction for his false testimony in Mr. Stevens' case. We know that the only physical evidence that connected Mr. Stevens to the crime was a hair found in his truck. We know that now the testimony that was used at trial is scientifically invalid and cannot be used, according to the FBI. We know that the knife that was used to connect him to the wounds on the victim is of no relevance now because the medical examiner has said that the wounds on the victim were not, in fact, caused by a knife, but instead a boat propeller. And we also know that this investigation was led by a deceitful and manipulative special agent, David Riley, and this Court has acknowledged as much when it affirmed the decision in the Beverly Monroe District Court case granting habeas, citing his deplorable tactics in that case. So we certainly submit that we have satisfied both prongs and that if you look at the evidence underlying these claims, in light of the evidence as a whole, that we have established that no reasonable fact finder would have found him guilty. Thank you, Ms. Givens. I note that the Court knows that you are court-appointed, and certainly the Fourth Circuit genuinely appreciates the efforts of court-appointed attorneys because we couldn't do our job without you doing your job. Thank you so much. We'll come down and greet counsel and move to the second case.
judges: Henry F. Floyd, Stephanie D. Thacker, Julius N. Richardson